Good morning, may it please the court. My name is Glenda Aldana Madrid of the Northwest Immigrant Rights Project. On behalf of petitioner Antonio Flores Bustos, I'd like to reserve two minutes for rebuttal. Mr. Flores lost his green card and was unlawfully ordered removed because his attorney failed to challenge his removability. That challenge turned on the proper application of the categorical and modified categorical approaches to a STEP 3 guilty plea, something Mr. Flores had no chance of understanding, much less questioning. So he trusted his attorney and did all he could to prevent his removal. He applied for cancellation of removal. He gathered evidence. He presented testimony. And when he lost, he appealed that loss to the BIA, presumably on the advice of that same counsel, whom he again retained on appeal and who again failed to challenge removability. It was only after he exhausted his administrative options that he was removed. The question in this case is whether due diligence required that he take an additional affirmative step of consulting an immigration attorney out of the blue without any suspicion that his attorney had failed him and that there was a way to undo his removal order. So your position is the 12-year lapse doesn't matter and he shouldn't have been required to do anything to in effect result in equitable tolling? Your Honor, our answer is that the 12 years do not matter because the case law from this circuit of IMV Holder and a lot of the other equitable tolling cases in this realm require that the analysis be case-specific and fact-specific and in the facts of this, given the facts of this case, Mr. Flores was diligent in pursuing relief. He simply did not know during those 12 years that there was relief to be pursued. But Avakian tells us that we need to look at three factors when assessing due diligence. And the first factor is if and when a reasonable person in Mr. Flores' position would suspect the specific fraud or error. Notably, the BIA was silent on this factor, presumably because it recognized that it was unreasonable for a person of Mr. Flores' circumstances and background to have realized that his counsel had failed him when it involved understanding a very technical and highly complex... But he was removed again in 2015 and I think that the BIA relied in part on the fact that he didn't seek counsel at that time to go over his options that he might have had. Why is that an abuse of discretion for the BIA to have reasoned that way? Your Honor, it was an abuse of discretion because the BIA was supposed to assess whether it was reasonable for Mr. Flores to have sought relief during that interim period. And to take the second removal, there is nothing in the record, Your Honor, to show that Mr. Flores had any opportunity to consult counsel. There's definitely nothing on the record showing that he had an opportunity to contest that removal before... Well, everybody has an opportunity to look for a lawyer. It depends on how summarily they are removed, Your Honor, and where they're located and what access to counsel they actually have. But doesn't your client have some obligation to make a record demonstrating those things about 2015 in order to rely on the factors that you've just described? Sure, Your Honor. And Evagen tells us that an individual who is ignorant of counsel shortcomings, which is the case here and the BIA acknowledged that Mr. Flores was ignorant of counsel shortcomings. Whether he made a reasonable effort to pursue relief turns on whether he was diligent in pursuing relief and relied on the advice of counsel. And here, the record shows us that where Mr. Flores was aware there was relief to be sought, he pursued it diligently. He applied for cancellation of removal. He provided testimony. He appealed to the BIA. His testimony makes clear he didn't know he could fight to keep his green card in the first place. And it wasn't until his public defender told him last year that he could actually do something about that threshold, that initial step, that Mr. Flores moved. Putting the 12 years aside for just a moment, what event occurred that caused him to take the steps that you've just described? He was arrested, Your Honor, for his federal prosecution for criminal reentry. And he was assigned a federal defender at that point who was able to review his file and alerted him to the fact that he could actually challenge that initial removability, which he was unaware of, and that is undisputed in the record. And so, Avagian tells us, and this is where the BIA's failure to engage with Avagian is problematic. Avagian says you need to look to determine whether it's reasonable for an individual who is ignorant of counsel's shortcomings, whether he was diligent in pursuing relief and relied on relief that he was aware of from the advice of counsel. And here, Mr. Flores pursued all relief he was aware of in his initial removal proceedings, and as soon as he learned there was ineffective assistance, he acted quickly and promptly. He filed his motion to reopen, complying with all of the Losada requirements, within 84 days. Let me ask you, you know, the BIA doesn't cite Avagian, but really the equitable tolling considerations that are laid out there are very similar to what the BIA did cite. So, do you have a case that maps closely on this? Because I look at the more recent cases, like Perez Camacho and others, and I don't see a situation where relief has been given in this kind of a situation, but maybe there's a case that we should be looking at. Well, Your Honor, there is a case, not out of this circuit, but out of the Fourth Circuit, Williams v. Garland, where the petitioner similarly did not seek a second opinion or consult an attorney because he was unaware there was any relief for him to pursue. And the Fourth Circuit squarely rejected the idea that a deported immigrant should be consulting counsel just out of the blue when they do not have any reason to believe there is relief to be had. But that's why I asked you the question that I did, because your client's affidavit says that when he came back to the United States unlawfully after his first removal, he got into criminal problems and was deported again. And I guess I don't understand why it's unreasonable for the BIA or an abuse of discretion for them to say that diligence would have meant talking to some lawyer in 2015 about his criminal and immigration problems. Of course, Your Honor. So not exactly analogous to the facts here, because they are pretty unique. This Court has held, though, that due diligence does not require that an individual seek a second opinion, even where there are red flags, which, in this case, Mr. O'Keefe. It's not really a second opinion. I mean, he was facing new problems. Well, they were arising. And this time, when he faced new problems, he had the assistance of a lawyer. This time with the criminal reentry, yes, Your Honor. Right. Right. But he also, but he says in his affidavit that he had criminal problems before or in 2015 also. Yes, Your Honor. But those criminal problems were unrelated, or at least there's nothing in the record suggesting they were related to immigration, whereas this criminal problem was directly related to his prior removal. And so that is why the immigration, there was an opportunity for him to consult, and it was reasonable for him to look into his immigration case. But those other criminal matters were unrelated. Right. But he was also deported again in 2015. Of course. Of course. But there was no, there's no indication in the record, at least, that those criminal matters were related. It was simply that he came to the attention of DHS, presumably when he got into that trouble, and that's why they removed him. But everything on this record, there's nothing on this record indicating that that wasn't an expedited removal, a summary removal, where he didn't have opportunity to consult counsel. Would you like to save your remaining time for rebuttal? I would. Thank you, Your Honor. We'll hear from the government. May it please the Court. I'm Jonathan Robbins, and I'm here on behalf of Merrick Garland, the Attorney General. Good morning to all of you. As you've just discussed with my colleague, the key question before the Court today is whether the Board was within its discretion to deny the petitioner's untimely motion to the Board's final order of removal in this case. And the answer to that question is yes, the Board was within its discretion because it reasonably determined that the petitioner did not establish that he exercised due diligence in pursuing his ineffective assistance of counsel claim such that equitable tolling of the motion would be warranted. Now the record amply supports the Board's decision in that case because, as Your Honors have already pointed out, the petitioner did nothing with his case for 12 years. Now the petitioner has glossed over one of the things that the Court considers in assessing diligence, and I'll read it directly from the case law because I think it's pertinent to this case. One of the things the Court considers is that whether petitioner took reasonable steps to investigate the attorney's suspected fraud or error, or if petitioner is ignorant of counsel's shortcomings, whether petitioner made reasonable efforts to pursue relief. And that's really where the petitioner's argument hits a brick wall because he didn't do anything in 12 years. It's not just not seeking a second opinion. Your Honor has already pointed out that he was in immigration proceedings in 2015, did investigate that. When you look at this Court's jurisprudence on diligence, and you look at the cases where the Court has granted petitions for review, those are cases where the individual has done something to keep their case going. They've filed appeals, they filed motions to reopen, they consulted new counsel. So, okay, let's be practical about it. Round one, he loses at every step, right? Well, he didn't file a petition for review of the initial order, but up to the Board, yes, he lost at each step. Up to the Board, he loses at each step. So at that point, what would have tipped him off or even made him think, I better investigate if my counsel is bad? Well, in a motion to reopen, it's his burden to demonstrate what happened below. And the Board couldn't really speak to that. What the Board pointed out was that he didn't detail what he did in the intervening 12 years. If you take a look at the affidavit . . . I mean, that's not my question. My question really is, these cases are always difficult because you often have petitioners who are not particularly highly educated, and we already know that even people who are highly educated, like yourself, find immigration law to be a complex area. They always use these pablum statements, like, well, he didn't do anything to investigate. But the question is, what would have prompted him to do something to investigate the counsel? Was there any tip-off, anything in the record that we can see that would have prompted him to do that? Nothing in the record with the exception of potentially the fact that there was still an avenue for him to keep pursuing the relief and that he could have filed a petition for review. But there's nothing in the record that would tell us one way or the other. The only thing we have in the record as to what actually happened is his affidavit that he filed with the motion to reopen. And in that affidavit on page 73, he says, the immigration judge denied my case. Mr. Edmondson appealed, and we lost the appeal. After that, I was deported. And that's it. That's all he has to say on the matter. So the board, in its decision, I don't think it was arbitrary, capricious, or contrary to law for the board to say, you haven't detailed what steps you took in anything in the intervening 12 years. I mean, if that's all he puts in the motion to reopen, and it's his burden of proof to discretion for the board to say, that's not enough to establish diligence. What about the case cited by counsel at a Fourth Circuit, Williams v. Garland, where they said that it's not realistic to think that a petitioner would consult about counsel ineffectiveness? Is that distinguishable? Why wouldn't we go that route? Well, putting aside that it's an out-of-circuit case, there are cases that are more on point in this circuit that would control. For example, the Bonilla case, that was a case where the individual did nothing for six years. I mean, the facts of that case are very much, they were actually better for Bonilla than they are for the petitioner in this case. And this court denied it. So I would say that this court's case was controlling. But as I recall in the Williams case, I don't believe there was an intervening situation where the petitioner came back into the immigration proceedings like in this case, where we have the additional 2015 removal. So your position is that that intervening 2015 reentry would at least trigger again for him to say, what's going on here? Am I really removable? Should I really be deported? Yes. In the absence of any explanation as to why that wouldn't, right? In other words, the board said he didn't detail what he did. It pointed out that he had this additional removal in 2015 and that his affidavit does not explain what steps he took. And so it's really a failure in his motion to demonstrate. It's possible, I suppose, that an individual might take steps and could detail them in an affidavit that maybe equitable tolling would be warranted. But we just don't have that because of how sparse his affidavit was before the board. Now there is one wrinkle in this case. You may have noticed in the government's brief, we, in our first footnote, we pointed out that in his opening brief, the petitioner concedes that that 2015 removal order was a reinstated removal order. And that means that if this court were to remand the case, the board isn't going to be able to reopen anyway on remand. It's going to be precluded by statute from doing so. It doesn't have jurisdiction to reopen. This court's case law makes that clear in Bravo Bravo and Cuenca and the reinstatement cases. So even if the court were to disagree with diligence, if it goes back to the board now that we know that it's a reinstated removal order in 2015, he's not going to be able to get reopening anyway. So now I don't think the court has to address that here. We don't have reinstatement in the record here. But I do think it's worth pointing out that on remand, the board isn't going to be able to reopen the case. So unless your honors have any specific questions with respect to the diligence inquiry, the government will submit on the briefs. Thank you. Thank you very much for your time, your honors. Your honors, a few points of clarification. There is nothing in the record indicating the nature of Mr. Flores' removal in 2015. So there is nothing on the record that the BIA can use below unless DHS submits evidence that it was a reinstated order of removal. And so on this record, all we know is that Mr. Flores was deported a second time in 2015. That is not enough to deny the BIA of jurisdiction over his motion to reopen. What's your response to the government's argument just made at the end that if we were to grant relief and send it back to the board, it would become apparent that this was a reopening of removal and he would be ineligible for relief? Sure, your honor. I think, honestly, if DHS had had that evidence of it being a reinstated order, it would have already submitted it because it would have gotten rid of this case much sooner. But regardless, if the court finds that that issue is relevant, and it shouldn't be because there is nothing on the record indicating it was a reinstated order, but should the court find that that issue is relevant, we would want to brief it because we think that Cuenca is in tension with Morales Izquierdo and other case law out of this court. So we do not concede that Mr. Flores would not, that there would be no jurisdiction here. And really briefly to the other two points, respondent overstates the fact that there were immigration proceedings in 2015. There's nothing on the record showing that there were any proceedings. Individuals often are turned back at the border or by an immigration official in a matter of minutes or days without an opportunity to consult anybody. So I question whether we can, the BIA never found that there were any real proceedings beyond the fact that he was removed in 2015. And second, and third rather, there was no relief to be had during those 12 years unless Mr. Flores first discovered that his counsel had been deficient. He could not really appeal the PFR, the BIA's denial to this circuit because his counsel had waived removability, so that issue would have been waived regardless. And because he had no relief other than discovering the ineffective assistance of counsel, the fact that the ineffective assistance of counsel was so challenging and complicated, make it of his background, an 11th grade dropout with little English proficiency and very few resources to have actually suspected what his immigration counsel had done. And the BIA never found that he should have so suspected. Thank you so much, Your Honors. Thank you. Thank both counsel for your argument this morning. Antonio Flores Bustos v. Garland is submitted.
judges: HAWKINS, GRABER, McKEOWN